The PEOPLE of the State of Colorado, Complainant,

v.

Armando C de BACA, Attorney–Respondent.

No. 97SA50.

Supreme Court of Colorado, En Banc.

Nov. 3, 1997.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

John B. Kusic, Denver, for Attorney–Respondent.

PER CURIAM.

This is a lawyer discipline case. A hearing board recommended the suspension of the respondent from the practice of law for a period of two years. A hearing panel of the supreme court grievance committee approved the board's findings and conclusions but modified the recommendation of discipline to disbarment. We have decided that a two-year suspension is an adequate sanction in this case.

I.

The respondent was licensed to practice law in Colorado in 1973. The respondent did not answer the formal complaint filed in this case and the hearing board entered a default against him on May 18, 1995. See C.R.C.P. 241.13(b). The respondent's current counsel filed an entry of appearance on the respondent's behalf on June 1, 1995, but did not file a motion to set aside the default until two days before the originally scheduled default hearing in this case, October 15, 1995. The board found that the respondent did not show that his initial failure to answer was the result of mistake, inadvertence, surprise, or excusable neglect. See id. The board also found that the failure of the respondent and his attorney to file a motion to set aside the default earlier was not the result of mistake, inadvertence, surprise or excusable neglect. See id. Our examination of the record confirms that the hearing board's denial of the motion to set aside the default was not error. We conclude that neither the respondent's initial failure to answer, nor the failure to move to set aside the default until the last minute, was the result of mistake, inadvertence, surprise, or excusable neglect. See id.

The allegations of fact contained in the complaint were deemed admitted by virtue of the default. See C.R.C.P. 241.13(b); People v. Paulson, 930 P.2d 582, 582 (Colo.1997). Based on the default and the evidence presented, the hearing board found that the facts which follow had been established by clear and convincing evidence.

A. Arturo Aguayo

On or about July 30, 1992, Aguayo spoke with the respondent about the possibility of filing an action against parties who allegedly interfered with a concert he promoted. Aguayo gave the respondent relevant docu-

ments to review to permit the respondent to determine whether to take the case.

Two weeks later, the respondent suggested that Aguayo have an accountant calculate the damages. Aguayo did so, and shortly afterwards, in September 1992, the respondent agreed on the telephone to handle the case on a one-third contingent fee basis. However, Aguayo never received a contingent fee contract.

In February 1993, the respondent indicated that Aguayo should have the tape recordings of a broadcast translated and transcribed. Attendance at the concert was supposedly discouraged in this broadcast. Aguayo delivered the transcripts to the respondent by November of 1993. The respondent told him that he would soon file the complaint.

In November 1993 the respondent was suspended from the practice of law for ninety days, effective thirty days after the date of the opinion, November 15, with the requirement that the respondent petition for reinstatement pursuant to C.R.C.P. 241.22(b)–(d). See *People v. C de Baca*, 862 P.2d 273, 275 (Colo.1993). The respondent has not been reinstated from this 1993 suspension.

The respondent did not notify Aguayo that he had been suspended as required by C.R.C.P. 241.21(b). Sometime between December 1993 and March 1994, the respondent told Aguayo that he needed $2,000 to "file the complaint." Aguayo agreed to pay the respondent $100 a month, and he made at least three of these $100 payments between December 1993 and May 1994.

In May or June of 1994, Aguayo contacted the respondent to discuss the filing of the complaint. The respondent then advised Aguayo that he had been suspended and could not file the action and that Aguayo should find another lawyer. Either the respondent or another lawyer told Aguayo that the statute of limitations would expire on July 3, 1994. The respondent did not offer to refund the $300 that Aguayo had paid him while the respondent was suspended from the practice of law. Aguayo telephoned twenty to thirty lawyers, but could not find anyone willing to take his case given the

upcoming deadline. Aguayo then filed two complaints pro se, one in federal district court and one in state district court. The federal complaint was dismissed for lack of subject-matter jurisdiction.

On July 1, 1994, Aguayo typed a complaint using a typewriter in the clerk's office of District Court for the City and County of Denver, and filed it in the district court after paying the filing fee. This caused him to be late returning to work and he was reprimanded by his employer. He suffered other work-related problems due to the last-minute efforts forced upon him by the respondent to find another lawyer to handle the case and then having to file the action himself. Aguayo eventually found counsel to take the case.

The hearing board summarized its findings and conclusions in the Aguayo case as follows:

> The respondent neglected Mr. Aguayo's legal matter from September 1992 to May 1994 by representing that he would file a lawsuit and neglecting to do so. The respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation by agreeing to represent Mr. Aguayo in September 1992, and thereafter failing to advise Mr. Aguayo of his December 15, 1993, suspension. The respondent further engaged in misrepresentation by collecting $300 in legal fees or costs from Mr. Aguayo while the respondent was under suspension.

Before January 1, 1993, the effective date of the Rules of Professional Conduct, the respondent violated DR 6–101(A)(3) (neglecting a legal matter). After January 1, 1993, the respondent's conduct violated Colo. RPC 1.3 (neglecting a legal matter); and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

### B. Hector Alvarez

Hector Alvarez (a/k/a/ Hector Alvarez Mendez) was accused of theft by his employer, Osco Drug, on February 23, 1989. Alvarez claimed that he was assaulted, falsely imprisoned, and wrongfully discharged from his employment, and he hired the respondent

the following day. On May 24, 1989, Alvarez was acquitted of the criminal charges brought against him. The respondent agreed to pursue civil remedies against Osco Drug on Alvarez's behalf.

In December 1989, Osco's insurer offered to settle with Alvarez for $3,000, which Alvarez rejected in accordance with the respondent's recommendation. Between January 1990 and August 1991, Alvarez spoke with the respondent a number of times and was under the incorrect impression that the case had already been filed, and if the settlement negotiations were unsuccessful, the case would go to trial. In August 1991, the respondent tried to refer the case to another lawyer, but the other lawyer refused because the statute of limitations had expired the preceding February.

Alvarez contacted the respondent's professional liability carrier. In a letter to the carrier, the respondent conceded that Alvarez's allegations were "basically accurate." The insurer denied Alvarez's claim, however, because it was not made within the policy period. Alvarez filed a malpractice action against the respondent in September 1992. The case was settled in September 1993, with the respondent agreeing to pay Alvarez $8,000; $4,000 up front and the rest in $2,000 installments. When the respondent defaulted on the agreement, a judgment was entered against the respondent. The judgment was satisfied in 1995 following C.R.C.P. 69 proceedings and a contempt citation against the respondent. The respondent's conduct in the Alvarez matter violated DR 6–101(A)(3) (neglecting a legal matter).

## II.

The hearing board recommended that the respondent be suspended for two years. The hearing panel modified this recommendation to disbarment based on the respondent's prior disciplinary history and the harm he caused his clients. Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) (ABA *Standards*), in the absence of mitigating factors, disbarment is generally appropriate when:

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards* 4.41. Suspension is generally appropriate when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." *Id.* at 4.42.

The respondent's neglect almost caused Aguayo to lose his claim because of the statute of limitations, a potentially serious injury. Moreover, his neglect of the Alvarez case did seriously injure his client because Alvarez's claim became time-barred. The fact that the respondent was compelled to pay the judgment entered against him does not alter the severity of the original injury.

In addition, the respondent has an extensive history of previous discipline, which is an aggravating factor for the purpose of determining the proper discipline. *See id.* at 9.22(a). He was given a letter of admonition in 1979 for neglect and failure to return documents to his clients. He was admonished in 1980 for neglect, and again admonished in 1981 for neglect and for the intentional failure to act. He was admonished in 1983 for neglect, and publicly censured in 1987 for neglect and for wrongful disbursement of funds to a client, *see People v. C de Baca*, 744 P.2d 512 (Colo.1987). In 1990, the respondent was once more admonished for neglect, and in 1991 he was privately censured for engaging in conduct prejudicial to the administration of justice. Finally, we suspended the respondent in 1993 for ninety days and required that he petition for reinstatement in order to demonstrate by clear and convincing evidence that he is once again fit to practice law. *See People v. C de Baca*, 862 P.2d 273, 275 (Colo.1993); C.R.C.P. 241.22(b)–(d). He has not been reinstated from that order and thus remains suspended.

Additional aggravating factors include an established pattern of misconduct, *see* ABA *Standards* 9.22(c); multiple offenses, *see id.*

at 9.22(d); and substantial experience in the practice of law, *see id.* at 9.22(i). The hearing board also found that the respondent had a dishonest and selfish motive when he continued to collect payments toward legal fees from Aguayo while indicating that he would file an action on Aguayo's behalf, even though he could not since he had been suspended from the practice of law. *See id.* at 9.22(b). The board also considered Aguayo to be a vulnerable victim because he is uncomfortable speaking and writing English and was unsophisticated in the legal process at the time of his dealings with the respondent. *See id.* at 9.22(h). Finally, the board found "that the respondent engaged in deceptive practices during the disciplinary process, in the respondent's characterization of his previous discipline." *See id.* at 9.22(f). In particular, the respondent failed to see the seriousness of his misconduct in this case and most of the other disciplinary proceedings. In mitigation, the board found that other penalties or sanctions had been imposed on the respondent. *See id.* at 9.32(k).

The hearing board recommended that the respondent be suspended for two years rather than disbarred, reasoning that an additional two-year suspension would make the respondent ineligible for reinstatement until nearly six years after his suspension under our 1993 order. If a lawyer remains suspended for five years or longer, the lawyer must successfully complete the examination for admission to practice law after expiration of the period of suspension before he may be reinstated. *See* C.R.C.P. 241.22(b). Given this circumstance, and because the misconduct in this case occurred either prior to, or at the same time as, the respondent's ninety-day suspension, we have decided to accept the hearing board's recommendation of a two-year suspension, rather than the panel's recommendation of disbarment.

### III.

Accordingly, it is hereby ordered that Armando C de Baca be suspended for two years, effective immediately. Prior to any petition for reinstatement, and as a condition thereof, the respondent must make restitution to Arturo Aguayo in the amount of $300

plus statutory interest from May 31, 1994. The respondent is also ordered to pay the costs of this proceeding in the amount of $850.53 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.

SCOTT and BENDER, JJ., do not participate.