Robert Melvin HOHERTZ, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 00PDJ014.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 31, 2000.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY, MARILYN J. DAVID, and DANIEL C. KOGOVSEK, both members of the bar.

## OPINION AND ORDER APPROVING REINSTATEMENT

### *Attorney Reinstated*

This reinstatement hearing was held on June 28, 2000, pursuant to C.R.C.P. 251.29(b) and (c) before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Marilyn J. David and Daniel C. Kogovsek. Debra D. Jones, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People"). Michael D. Gross represented petitioner Robert Melvin Hohertz ("Hohertz"). The following witnesses testified on behalf of Hohertz: Karen Dannewitz, R.N., Patrick W. Buckingham and James N. Travis. Hohertz testified on his own behalf. The parties stipulated to the admission of exhibits 1, 2 and 3. The parties also submitted a Stipulation of Facts and a Stipulation for Conditions Upon Reinstatement. At the request of the petitioner and there having been no objection by the People, the PDJ took judicial notice of the Petition for Reinstatement and its attached exhibits.

The PDJ and Hearing Board considered the testimony and exhibits admitted, assessed the credibility of the witnesses, and made the following findings of fact which were established by clear and convincing evidence:

## I. FINDINGS OF FACT

Hohertz has taken the oath of admission and was admitted to the bar of this court on July 13, 1984 and is registered as an attorney upon the official records of this court, attorney registration no. 13910. He is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

Hohertz was initially suspended by the Supreme Court from the practice of law for ninety days effective July 30, 1995. *People v. Hohertz*, 898 P.2d 1068 (Colo.1995)("the 1995 suspension"). Prior to reinstatement from that suspension, additional requests for investigation were lodged against him. Those additional requests for investigation and subsequent proceedings resulted in the imposition of additional discipline. In effect, the Supreme Court converted the ninety day suspension into a three year suspension commencing retroactively to June 30, 1995.[1] *See People v. Hohertz*, 926 P.2d 560 (Colo. 1996)("the 1996 suspension"). Subsequently, in a separate matter, the PDJ approved a Conditional Admission of Misconduct agreed to by Hohertz and the People in Case No. 99PDJ101 and by Order dated October 19, 1999, the PDJ imposed an additional ninety day suspension ("the 1999 suspension").

The parties stipulated that Hohertz has complied with the provisions of C.R.C.P. 251.29(b) and (c) with the exception of a requirement in the 1996 suspension order which required Hohertz to pay restitution to two former clients. The parties' Stipulation of Facts stated that although Hohertz had made significant efforts to pay the two individuals, including paying the required funds plus interest to his attorney to be held for the benefit of the former clients and hiring a private investigator to locate the former clients, the clients could not be found. The funds have recently been placed in an interest-bearing account pending discovery of the former clients' current location. With the exception of the aforesaid matters, the parties stipulated that Hohertz has provided notice to clients and parties in litigation pursuant to C.R.C.P. 251.28(b) and C.R.C.P. 251.29(c) regarding the 1995 suspension, the 1996 suspension, and the 1999 suspension. Further, Hohertz has complied with the requirements of C.R.C.P. 251.29(d) regarding all three suspensions, and has paid the costs of each proceeding.

The misconduct which resulted in both the 1995 and 1996 suspensions can be character-

---

1. Both the 1995 and 1996 suspension decisions required the inclusion of certain conditions upon reinstatement.

ized as a pattern of neglect of clients and their cases, failure to communicate with clients and deception of clients to conceal the neglect. For a period from approximately 1991 through 1995, Hohertz failed to timely address his clients' needs, either failing to keep them adequately informed of his progress in resolving their legal concerns or misleading the clients by telling them he had accomplished certain tasks when in fact he had not. Indeed, both opinions imposing suspensions upon Hohertz rely, in part, upon prior instances of misconduct resulting in Letters of Admonition which reflect similar misconduct during the same approximate time frame.[2]

Evidence presented in the 1995 and 1996 disciplinary proceedings established that Hohertz suffered from major depression. The medical evidence presented in those proceedings and also in this proceeding established that his misconduct was caused by his mental condition. That condition weighed heavily in both the 1995 and 1996 suspension decisions.

The 1999 suspension arises from a different form of misconduct. In 1998, Hohertz had developed a personal relationship with a woman. Discussions of marriage had taken place. Unfortunately, the relationship deteriorated and during a visit to the woman's apartment, she asked him to leave, Hohertz did not leave; rather, he stood in the doorway and prevented the woman from departing her residence. Hohertz was subsequently convicted of false imprisonment. Hohertz self-reported his misconduct and entered into a Conditional Admission of Misconduct with the Office of Attorney Regulation Counsel. The Conditional Admission acknowledged that the misconduct violated The Colorado Rules of Professional Conduct ("Colo.RPC") 8.4(b)(commission of a criminal act which reflects adversely upon an attorney's honesty, trustworthiness or fitness to practice law).

Following the 1995 suspension, Hohertz's personal life began a downward spiral. Although Hohertz commenced therapy following the 1995 suspension proceedings, his increasing depression caused him to eventually withdraw from therapy. Thereafter he suffered at least one major depressive episode. In approximately 1997, Hohertz resumed individual therapy and for the last eighteen months has also regularly participated in group therapy. Both his treating therapist and a psychiatrist who met with Hohertz on five occasions and conducted an independent medical evaluation agree that Hohertz suffers from major depression and will require long-term therapy treatments. They also agree that Hohertz has made significant progress in his recovery, his depression is presently under control, he has developed an ability to assess his own shortcomings, he has substantially improved his accountability for his conduct and he has made sufficient progress to reasonably and reliably exercise professional judgment. Both medical professionals caution, however, that episodes of depression may recur and recommended that Hohertz continue with the individual and group therapy for at least two years. During the lengthy course of his therapy, Hohertz has declined to take medication notwithstanding the recommendation of his treating professionals.

Following the 1998 domestic incident, Hohertz and his therapist broadened the scope of his therapy to include not only depression but his response to interpersonal relationships as well. Both the independent medical evaluation and the report of his treating therapist conclude that Hohertz has made improvement in his response to others.

Hohertz expressed and demonstrated genuine recognition of and remorse for his prior misconduct. He recognizes the need for continuing therapy, has adopted realistic goals in his recovery and has openly confronted the shortcomings in his personal and professional life which resulted in his prior discipline.

From 1996 to the present, Hohertz has worked as an assistant to a practicing attorney in Colorado Springs without incident. Under supervision, he has met with clients, communicated with clients on behalf of his employer, prepared pleadings, conducted legal research and followed office procedures

---

2. By the time of the issuance of the opinion which imposed the 1996 suspension, Hohertz had received five Letters of Admonition.

designed to avoid neglect. Hohertz has maintained his competency by reading new case law on a weekly basis and has taken forty-nine hours of continuing legal education in those areas of the law in which his prior misconduct arose.[3]

Patrick Buckingham, a Colorado Springs lawyer, has employed Hohertz for four years and works with him on a daily basis. Buckingham has observed Hohertz prepare pleadings, conduct research and prepare briefs, communicate with clients and manage a busy law office. Buckingham expressed the opinion that Hohertz has maintained his competency in the law and is currently familiar with the law and the applicable rules of procedure. Buckingham also expressed the opinion that Hohertz now handles stress well and is capable of reentering the practice of law.

## II. CONCLUSIONS OF LAW

■ C.R.C.P. 251.29(b) sets forth the test which must be met during a reinstatement proceeding in order to authorize reinstatement to the practice of law. It provides, in relevant part:

> An attorney who has been suspended ... must file a petition with the Presiding Disciplinary Judge for reinstatement and must prove by clear and convincing evidence that the attorney has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of this chapter, and is fit to practice law.[4]

■ Thus, an attorney who has been suspended from the practice of law must bear the burden of proving that he or she is: (1) rehabilitated; (2) has complied with all applicable disciplinary orders and all provisions of the Colorado Rules of Civil Procedure relating to attorney discipline regarding actions required of suspended attorneys, and (3) is fit to practice law. All three of the elements of proof must be established before reinstatement may be authorized.

■ In deciding whether the attorney has been rehabilitated, the fact finder must examine the prior instances of misconduct which resulted in the requirement for a reinstatement proceeding.[5] *See* C.R.C.P. 251.29(c)(5); *Goff v. People*, 35 P.3d 487, 495 (Colo. PDJ 2000), 29 COLO. LAW. 9, ___ (October 2000)(*citing Tardiff v. State Bar*, 27 Cal.3d 395, 165 Cal.Rptr. 829, 612 P.2d 919, 923 (1980) and *Roth v. State Bar*, 40 Cal.2d 307, 253 P.2d 969, 972 (1953)(holding that in an application for reinstatement ... the proof presented must be sufficient to overcome the court's former adverse judgment of [the] applicant's character)). The prior instances of Hohertz's misconduct which gave rise to the requirement of a formal reinstatement proceeding consist of neglect, failure to communicate and deceit associated with his neglectful conduct. The findings contained in both the 1995 and 1996 suspension orders attribute the cause of that misconduct to Hohertz's depression and mental condition. Accordingly, the focus of inquiry in this proceeding must be Hohertz present mental condition.

For nearly two years Hohertz has undergone intensive therapy, individual and group, to recover from his depression. Both his medical provider and the independent medical evaluator opined that he has recovered sufficiently to exercise professional judgment and is capable of resuming and satisfying his professional responsibilities. Both, however, have recommended that Hohertz remain in therapy for at least two years to prevent a recurrence of the condition that caused his earlier misconduct. Independent, non-medical evidence established that Hohertz is capable of and has been satisfactorily performing legal research, drafting, client contact and law office management.

---

**3.** All of the Continuing Legal Education courses Hohertz took were by home-study and he completed them within a one-month period of time shortly before his first Petition for Reinstatement was filed. Consequently, the PDJ and Hearing Board placed substantially less weight upon that evidence of competency than the testimony of the attorney who employs him.

**4.** Reinstatement proceedings are conducted before a hearing board as required by C.R.C.P. 251.29(d).

**5.** Not all misconduct requires a formal reinstatement proceeding. *See* C.R.C.P. 251.29(b).

Hohertz has maintained his competency to practice law by keeping current on developments in the law, actively participating in a busy law office environment under the supervision of a licensed attorney, and pursuing Continuing Legal Education courses. In his testimony before the PDJ and Hearing Board and in therapy sessions with his treating medical professionals, Hohertz openly acknowledged responsibility for his prior misconduct and demonstrated an understanding of the seriousness of that misconduct. With one exception, his conduct since the imposition of the three-year suspension has been free of misconduct.

The witnesses who testified on Hohertz's behalf all concurred that he has modified his character and manner of dealing with adversity in such a fashion that similar misconduct is not likely to be repeated. He is now committed to a renewed interest of assisting others in their difficulties and is cognizant that such assistance must be in accord with the requirements of the profession.

Therefore, the evidence is sufficient to establish that Hohertz has been rehabilitated from the conditions which resulted in the necessity for this reinstatement proceeding.

 Moreover, the evidence established that Hohertz is fit to practice law. Whether an attorney seeking reinstatement to practice law is fit requires a broader analysis than rehabilitation. *See Goff,* 35 P.3d 487, 496, 29 Colo. Law. 9, ___, (holding that C.R.C.P. 251.29(c) places the burden upon the disciplined attorney not only to establish rehabilitation but also to establish that he is fit to practice law). Even though a petitioning attorney may be rehabilitated from those events or conditions which precipitated the necessity for a reinstatement proceeding, there may be other factors present, such as a lengthy history of repetitive minor misconduct not of sufficient severity to require a reinstatement proceeding, which suggest the attorney is not fit to practice. Such is not the case here. Each of Hohertz's five prior Letters of Admonition arose out of misconduct strikingly similar to the misconduct which resulted in his three-year suspension. Although the testimony presented by the medical professionals does not directly attrib-

ute that series of minor incidents of misconduct to his depressive condition, the incidents did occur during approximately the same time frame and were consistent with the type of extensive and severe misconduct which was found to be attributable to his mental condition. It is, therefore, reasonable to infer that the condition which caused the prior minor misconduct was the same mental condition and has been adequately addressed by the intervening treatment.

Finally, the 1998 domestic violence event which resulted in a criminal conviction and additional attorney discipline must be examined. That misconduct is not the event for which Hohertz must prove rehabilitation, but is a factor which must be considered in making a determination of fitness to practice. Hohertz admitted that he violated Colo. RPC 8.4(b) (commission of a criminal act which reflects adversely on his fitness to practice law) as a result of his conviction of false imprisonment, § 18–3–303, 6 C.R.S. (1999), a misdemeanor and self-reported this matter to the Office of Attorney Regulation Counsel. As a result of that conviction, Hohertz was sentenced to a twenty-four month period of supervised probation, he was required to pay court costs of $138, and he was required to engage in a lengthy period of therapy. Hohertz has complied with all conditions of his probation. The scope of therapy which Hohertz has been receiving for his depression has been broadened to address the underlying factors which precipitated this isolated event. Although the events resulting in the criminal conviction did adversely reflect upon Hohertz's fitness to practice law, his subsequent conduct, including the acceptance of treatment, full compliance with the requirements of the supervised probation and open acknowledgment of the wrongfulness of his actions are sufficient to find that he is presently fit to practice law.

Under the factors set forth in *People v. Klein,* 756 P.2d 1013, 1016 (Colo.1988), the PDJ and Hearing Board find that Hohertz has established by clear and convincing evidence that he is rehabilitated, possesses the requisite ability and professional competence

to practice law, and is presently fit to practice law.[6]

The PDJ and Hearing Board are aware that Hohertz's mental condition may recur absent continuing attention, and are also cognizant of their duty to protect the public interest in allowing Hohertz to resume the practice of law. In accordance with that responsibility and pursuant to C.R.C.P. 251.29(e), the PDJ and Hearing Board impose the following conditions upon Hohertz as conditions on his resumption to the practice of law:

1. For a period of one year Hohertz shall engage in the practice of law in a law office setting which includes at least one other attorney and adequate support staff to insure the free exchange of ideas and advice.

2. Hohertz will secure the services of an attorney licensed to practice law in the State of Colorado, acceptable to the Office of Attorney Regulation Counsel, who has been practicing law for not less than five years to serve as an attorney monitor. The conditions set forth in paragraph 15 of the appendix to *People v. Hohertz*, 926 P.2d 560, 566 (Colo.1996) with regard to the law practice monitor shall apply.

3. Hohertz will submit to a psychiatric re-evaluation with Cynthia Rose, M.D., or such other psychiatrist approved by the Office of Attorney Regulation Counsel eighteen months following the issuance of this Order to reappraise his professional and personal progress. A copy of the re-evaluation report shall be provided to the Office of Attorney Regulation Counsel. In the event other psychiatric-related problems come to the attention of the Office of Attorney Regulation Counsel prior to the re-evaluation, the Office of Attorney Regulation Counsel may file a motion with the Presiding Disciplinary Judge seeking earlier re-evaluation.

4. A licensed psychiatrist of Hohertz's choice who has been approved by the Office of Attorney Regulation Counsel shall monitor Hohertz's psychiatric adjustment to the practice of law for a period of three years. The conditions set forth in paragraph 16 of the appendix to *People v. Hohertz*, 926 P.2d 560, 566 (Colo.1996) with regard to the psychiatric monitor shall apply.

5. Hohertz will remain in group therapy for one year. Hohertz shall increase the frequency of his individual therapy and shall remain in individual therapy for one year. Hohertz shall comply with all therapy recommendations, including recommendations involving prescribed medications. In the event either Hohertz's individual or group therapist recommends additional attendance beyond the one year term set forth herein, Hohertz shall comply with such recommendation pending further order of court.

6. All costs and expenses necessary for compliance with the requirements set forth in this Order shall be the sole responsibility of Hohertz.

7. Hohertz shall pay the costs of these proceedings. The People shall file a Statement of Costs with the PDJ within ten (10) days of the date of this Order. Hohertz will have five (5) days thereafter to file a Response to the Statement of Costs.

## III. ORDER OF REINSTATEMENT

It is therefore ORDERED:

ROBERT MELVIN HOHERTZ, registration number 13910, is REINSTATED to the practice of law effective the 31st day

---

6. The Supreme Court in *Klein* stated that determination of whether an attorney has established rehabilitation must include:

[C]onsideration of numerous factors bearing on the respondent's state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the respondent, the personal and community service aspects of the respondent's life, and the respondent's recognition of the seriousness of his previous misconduct. 756 P.2d at 1016.

of August, 2000, subject to the conditions set forth herein.